The next case on the deck is 5-16-0453, Hanko v. Stanko. Mr. Stanko, you've already taken a position. I have, Judge. I want to get you to lunch on time, if possible. Just this case, Mr. Ferencanter, to please the Court. I'm Rick Steiger, and I'm here this morning representing Dr. Roger Hanko in what is going to be a much simpler case deciding whether he needed to pay periodic child support and maintenance of $530,000 or $560,000. So you won't have any of the kind of issues you have here. There's a single issue on appeal, and that is the interpretation of the marital settlement agreements. Your standard of review is de novo. This is a matter of contract construction. Give the document its plain and ordinary meaning, and if there are any ambiguities, they're resolved against the drafter. This was a reasonably friendly divorce. Mr. Ferencanter represented the petitioner, Shelly Hanko. Roger was unrepresented. It had an unusual procedural history. They came to court in October of 2010, and a basically agreed judgment was entered, an agreed judgment attaching a separation agreement, a marital settlement agreement. This marital settlement agreement and judgment were prepared by Mr. Ferencanter. It required payments of $10,000 a month, combined child support and maintenance for a period of 60 months. The unusual feature about that was about a month later in November, Mr. Ferencanter filed a post-trial motion to set aside the agreed judgment that he had drafted. In January of 2011, a handwritten order was entered. Again, Dave was there representing Shelly. Roger was unrepresented. An amended marital settlement was entered at that time, and it provided in the order that that agreement shall supersede the prior settlement agreement. But that amended agreement included additional assets. It did, and there were some substantial changes. Under the amended agreement, Shelly was awarded half of Roger's BJC pension plan, which had not been mentioned in the first one at all. She's awarded half of Roger's Roth IRA, which was not in the first one at all. She's awarded 100% of a bank account at a bank in Jerseyville, previously not mentioned. She's awarded 100% of a Jerseyville bank CD, previously not mentioned. She's awarded 100% of her SURS pension, previously she had been awarded half. And she was awarded 100% of her Hartford variable annuity, that she had previously been awarded only half. That judgment provided, and the important wording is this, that Roger shall pay total support to Shelly of $10,000 a month for 53 months. The language was the total sum, not the additional sum. And where we get hung up on this, the court found that Roger paid $530,000, and at the end of paying the $530,000, Roger stopped paying. At that point, Mr. Farrington came in and filed a motion for contempt, and we led to the hearings that we had. The trial court in our case found the amended marital settlement agreement, second one, was a new agreement based upon new consideration of the parties. The amended marital settlement agreement provided for payments of $530,000 by Roger to Shelly. The court found that Roger had paid Shelly the $530,000. Per the handwritten order, the second settlement agreement superseded the prior settlement agreement, and I mentioned in the brief, Merriam-Webster says supersede means to take the place of. The amended marital settlement agreement required Roger to pay, and the wording is in there, the total sum of $10,000 a month for 53 months, and those words have to have meaning. At the time the second one is entered, Roger has already paid $30,000. Had Mr. Farrington intended to be specific, which we frequently do, we would say he's going to pay $10,000 a month for 53 months starting February 1st, the following month, or it's going to say he's going to pay an additional 53 payments of $10,000 a month. That language was not in there. What was in there was Roger agreed. When he went in there, he read it, he signed, he agreed to pay a total amount of 53 payments of $10,000 a month, which the court found he did. If there is ambiguity, Roger made his payments, he stopped making his payments, and then Mr. Farrington brings it to court on a contempt motion. They're alleging that the first $30,000 that was paid was not to be considered. It was to start at that point. And Judge Smith kind of got hung up on when does the document take, when is the order in effect? And she was saying, well, the order in effect requiring him to pay the $530,000 started in January at the time of the second marital settlement agreement, but she overlooked the language in that that said he is to pay the total amount of $10,000 times 53, or $530,000. The situation that you have is the second agreement is the only agreement. There is but one. There are not two marital settlement agreements. There's one. The marital settlement agreement says Roger is going to pay $530,000. Roger paid $530,000, but then the court says, well, he ought to pay $30,000 more because the first 30 was prior to this agreement. I think that's wrong. The agreement's plain meaning is you pay a total amount of $530,000. Roger paid that. The court found that. And the additional order of the trial court that he should pay another $30,000 is in error, and I would encourage the court to review this de novo and find that to be the case and find that Roger has fully fulfilled his obligations. Don't you think that at the time the order was entered, the amended order, both parties knew that $30,000 had been paid? They did know that. And so just as there is no mention of that, why would you mention it if you want a credit? I mean, do you agree there's no ambiguity in the contract? From my standpoint, there's no ambiguity. A total amount of $530,000 is unambiguous. So we're going to look at plain language of the four corners of the document. Yes. We're already having him pay $30,000, and now we're starting anew. Well, I don't know that we're starting anew. Starting anew with a new document? It says he's going to pay a total amount of $530,000. Isn't that the issue as to whether this document also has a lot of other consideration in it? It has all of the things you mentioned. It has things that are not at issue, daughter's health insurance coverage. $50,000 for weddings, yes. Medical expenses, things like that. So there's a lot of consideration going on of ways which could have included the $30,000. Right, but whose fault is that, Judge? It's the drafter's fault. If it was to be 53 additional payments, it would say he'll pay 53 additional payments, or he'll pay 53 payments starting next month, or he'll pay 53 payments and we're disregarding the 30 he's already paid. None of that was in there. And Roger didn't have an attorney there. I don't know why. Doctors sometimes do that. If Roger had had an attorney there, I guarantee you that language would have been clarified, but that burden is on Mr. Ferencamp because he was the drafter. And it's very simple. We do these every week to make it clear 53 payments starting next month. And had Dave put that in there, we would not be here. Okay, thank you for your time. Okay, Mr. Ferencamp, so why didn't you put it in there? Because it wasn't supposed to be in there. What happened is that, and I think what's going on now, this appeal is about Dr. Hanco wanting to have his cake and eat it too. After this original agreement was entered into, it was discovered there were assets that had not been allocated. So there were a three-month gap of time, period of time, in which he negotiated, and he was a very good negotiator, but he negotiated down from 60 payments of $10,000 each for $600,000, he negotiated it down to 53 months. And that accounted for three months of $10,000 payments, which takes it to $560,000, plus an additional $40,000 difference in the three-month period. He negotiated that, and that was what was written. There was no need to say anything else. As a matter of fact, it was pretty clear at the time it was entered that it's superseded. Superseded has plain language too. It substitutes for and takes the place of. Had there been a credit for those prior three payments, it would have said, he receives credit for the prior three payments. But it didn't because it wasn't part of the agreement. So what does total mean then? Total means from the moment that contract is entered until the end. Doesn't that conflict with what superseded means, that it is the only contract to consider, the only settlement agreement there was? The word total in that means something different. For family lawyers, it means something to us as opposed to periodic maintenance. Periodic maintenance is without end until it's reversed or appealed or something's done. We put in total payments to put in a fixed amount paid over a period of time, which is a hybrid between periodic payments and lump sum maintenance. It's designed to be set at total in payments that way. Otherwise, there could be some argument about when it would terminate or whether it could be modifiable. So that's put in every single time that I've drafted for 40 years, I've drafted these agreements. I always put in a total if I do that kind of document. And it's for that purpose. What happened, and what's interesting, is that if he thought it was so wrong, if he thought it was so improper, he had 30 days from the day it was entered by the judge. Then he had two years if he wanted to file a 214-01 motion, but he didn't. He waited 50 months, and then he just stopped paying. What happened is he negotiated the deal that gave him credit for those three months payments. That was $30,000. And then he got another credit for $40,000 as a result of his other consideration for the allocation of property. Could it be that he didn't file anything until later because, in his mind, total meant, okay, I've already paid three, I'm going to pay 50 more. And then once he gets to the end of what he thought was the total 53, then he thought, well, he better file something. It could be considered that if you knew the character, but the Judge Smith was there and heard him testify. And I think you've got to give some deference to her about his position and his argument on it and what he was saying. Because it was quite clear that she was in the perfect position to see how he conducted this. Was there an issue of credibility in this? Pardon? Is it apparent in the record that the court considered credibility issues? I don't think she made a statement as to that in her finding, but she's in the perfect position to determine what they intended. This is a contract case. Sure. We're not going to be on the forecourt because there's no ambiguity in the contract. It's very clear. At least you all don't think so. Maybe we do with this superseding and total issue. We believe it's very clear that 53 payments mean from the date of the entry of that order. And that would be $530,000, and he paid $500,000. Now, if it said you're to get credit for the prior three months, then it would say that. Also, by way of example, if there's a temporary order, let's say there's a temporary order and he's paid maintenance leading up to the final order. But this wasn't a temporary order. It was to be a permanent settlement. I agree. But my example is that if it was a temporary order and he made payments all the way up to the date of the judgment, and we said he's to pay 53 payments of $10,000, he's not going to go back and say, listen, I want credit for temporary. But that's apples and oranges, what you're comparing, because when they talk about superseding, they're talking about superseding a prior permanent settlement. So you can't compare a temporary with a permanent settlement. The example was whether you consider payments made previous to the order, whether it was thought to be permanent or not, whether or not you can compare those. And it is. You do not consider these temporary payments as a contribution towards a permanent settlement unless you specify it. By the same token, you don't consider those other payments. And you also don't consider that to supersede the temporary settlement. You're not replacing the temporary settlement order. Yeah, no, I agree. I'm using it for one part of it. There is definitely a difference between what happened in this case. But also, he received more than adequately compensation, if we're even considering that, for what he did. Instead of paying $600,000, he was paying $530,000. That was the agreement. So there's a difference in there of $70,000. And so he received more than enough credit. And it's very clear. You know, I could be crazy. I've been doing this for a long time. But it seems very simple to me. It seems that the language, the words, 53 payments, $10,000 a month, it's exactly that. Who's crazy here? Two points, very simply. Dave's argument about why. Dave's argument as to why he didn't file a post-trial motion, why he didn't file an appeal, is exactly Justice Overstreet's position. He signed up to pay $530,000. He paid it like clockwork. There's no question about that. Paid it just like clockwork. And at the end of the 530, he stopped paying it. And it was at that point that they then raised this issue. I agree with Dave. I've been doing this for 38 years. And we write these things all the time. And if it's going to be 53 additional payments, every time I write them, 53 monthly payments starting next month and continuing each month thereafter until 53 payments are made. That's not what this says. This says he's going to pay $530,000, period, total $530,000. How do you ignore $30,000? You can't. And, again, the burden is on the drafter. If that's what Dave intended it to mean, he should have drafted it that way. What he wrote was, and it's in your appendix at A11, the language, he shall pay the total amount of $10,000 times 53. So I thank you for your time. Thank you. Well, you guys did do good on getting us to lunch. I'm sure it was all worth it. Thank you. Okay, that concludes the morning docket. This matter will be taken under advisement, and we'll get you an order. Thank you, both gentlemen. We are at recess for lunch, and we will meet again at 1 p.m. All rise.